UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

**BNSF RAILWAY COMPANY,**

 Plaintiff,

v.                 No. 4:22-cv-0950-P

**FLOAT ALASKA IP, LLC,**

 Defendant.

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant's Motion to Dismiss for Lack of Personal Jurisdiction Under Federal Rule of Civil Procedure 12(b)(2) ("Motion"). ECF No. 13. For the reasons stated below, the Court **DENIES** the Motion. However, in the interest of justice, the Court **TRANSFERS** this case to the United States District Court for the Central District of California.

## FACTUAL AND PROCEDURAL BACKGROUND

This suit arises out of the Parties' competing uses of the "Northern Pacific" trademarks in their respective industries. Plaintiff BNSF Railway Company ("BNSF") is one of the largest railroads in North America and covers an extensive portion of the western United States. ECF No. 1 at 2–3. In providing its railway-transportation services, BNSF and its predecessors have been associated with the Northern Pacific marks as early as 1893. *Id.* at 4.[1] Defendant Float Alaska IP, LLC ("Float Alaska") provides chartered airline-transportation services in the Pacific Northwest. ECF No. 14 at 1–2.

In 2021, Float Alaska filed five trademark applications with the United States Patent and Trademark Office ("USPTO") to facilitate its

---

[1] In 1970, the Northern Pacific Railway merged with other major railways to form the Burlington Northern Railroad. *Id.* Then, in 1995, Burlington Northern Railroad merged with Santa Fe to create the Burlington and Santa Fe Railway. *Id.* In 2005, the company assumed its current name—BNSF. *Id.*

providing airline-transportation services under the name "Northern Pacific Airlines." ECF No. 14 at 6–7. Around September 2021, the USPTO denied Float Alaska's attempt to register the marks on the grounds that they may be confused with BNSF's use of the Northern Pacific marks in the railway-transportation industry. *Id.* at 7. Then, in early 2022, Float Alaska challenged the USPTO's denial of its use of the Northern Pacific marks, to which the USPTO maintained its prior decision. *Id.* at 7–8. In September 2022, Float Alaska petitioned to cancel BNSF's marks with the United States Trademark Trial and Appeal Board, arguing that BNSF abandoned and no longer used its Northern Pacific marks in providing its railway-transportation services. *Id.* at 8.

Following Float Alaska's attempt to cancel BNSF's marks, BNSF initiated this action, alleging, *inter alia*, trademark infringement against Float Alaska. ECF No. 1 at 7–9. Float Alaska moves to dismiss BNSF's claims under Federal Rule of Civil Procedure 12(b)(2). ECF No. 13. BNSF has responded, ECF No. 16, and Float Alaska replied, ECF No. 18. The Motion is, therefore, ripe for the Court's consideration.

## LEGAL STANDARD

"When a defendant challenges personal jurisdiction, the party seeking to invoke the power of the court bears the burden of proving that jurisdiction exists." *Luv N' Care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006). To fulfill this burden, the party seeking jurisdiction must establish a prima facie case that personal jurisdiction is proper. *Jones v. Artists Rts. Enf't Corp.*, 789 F. App'x 423, 425 (5th Cir. 2019). A court may consider "the contents of the record before [it] at the time of the motion, including 'affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery'" in making its determination as to whether it possesses the requisite jurisdiction to hear a case. *Quick Techs., Inc. v. Sage Grp. PLC*, 313 F.3d 338, 343 (5th Cir. 2002) (quoting *Thompson v. Chrysler Motors Corp.*, 755 F.2d 1162, 1165 (5th Cir. 1985)).

## ANALYSIS

Float Alaska moves to dismiss BNSF's claims, contending that the Court lacks personal jurisdiction over it as a nonresident defendant. ECF No. 13. In the alternative, Float Alaska requests that the Court transfer this action to the United States District Court for the Central District of California. ECF No. 14 at 23–24.[2] The Court discusses each request below.

### A. Personal Jurisdiction

BNSF contends that the Court possesses personal jurisdiction over Float Alaska based on its "numerous and systemic contacts with Texas." ECF No. 1 at 2.[3] In response, Float Alaska avers that BNSF's jurisdictional allegations are demonstrably false and insufficient to establish a prima facie case of personal jurisdiction over it. ECF No. 14 at 6.

As interpreted by the Supreme Court, the Due Process Clause of the Fourteenth Amendment requires satisfaction of a two-prong test for a federal court to properly exercise personal jurisdiction: (1) the nonresident must have minimum contacts with the forum state, and (2) subjecting the nonresident to jurisdiction must be consistent with "traditional notions of fair play and substantial justice." *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024 (2021) (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316–17 (1945)). The minimum-contacts prong is further subdivided into contacts that give rise to specific jurisdiction and those that give rise to general jurisdiction.

---

[2] BNSF also supports Float Alaska's request in the alternative to transfer this action to the Central District of California as opposed to dismissing its claims if the Court determines that it does not possess jurisdiction over Float Alaska. *See* ECF No. 16 at 7–8. In fact, BNSF argues extensively that, given the stay of the trademark-cancellation proceedings brought by Float Alaska until the resolution of this matter, the interest of justice "would be *particularly* served by transfer." *Id.* at 7 (emphasis in original).

[3] The Court notes that BNSF does not specifically allege that the Court possesses either general or specific jurisdiction over Float Alaska. *See* ECF No. 1 at 2. Instead, it generally states that "this Court has personal jurisdiction over [Float Alaska]." *Id.* To be safe, the Court addresses both.

3

*Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327, 343 (5th Cir. 2004).

Float Alaska contends that both grounds are lacking. The Court agrees that it lacks general jurisdiction over Float Alaska and specific jurisdiction is, at best, tenuous.

1. General Jurisdiction

*First*, BNSF argues that the Court possesses jurisdiction over Float Alaska based on its numerous and systemic contacts with Texas, including operating a website that is accessible in Texas, recruiting pilots from the Dallas-Fort Worth metroplex, securing aircraft formerly operated by American Airlines, seeking crowd funding in Texas, planning scheduled flights to Texas, communicating with BNSF, and preparing to enter into contracts to provide transportation services in this district. ECF No. 1 at 2. The Court disagrees.

General jurisdiction exists when a defendant's contacts are so continuous and systemic to render them essentially at home in the forum state. *Helicopteros Nacionales de Colom. v. Hall*, 466 U.S. 408, 414 (1984). As the tone of the Supreme Court suggests, the threshold for proving that general jurisdiction exists is higher "because the state has no direct interest in the cause of action." *Bearry v. Beech Aircraft Corp.*, 818 F.2d 370, 374 (5th Cir. 1987) (citing *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 447–48 (1952)).

Here, Float Alaska is a limited liability company organized under the laws of the state of Delaware with offices in Anchorage, Alaska, and maintains its principal place of business in Pomona, California. ECF No. 13-1 at 9. It can hardly be said that such a business entity would be "at home" in Texas unless it possesses significant business contacts with the state. *See Hall*, 466 U.S. at 414.

Even resolving all conflicts in favor of BNSF's jurisdictional allegations regarding Float Alaska's business relationship with Texas, they depict an infrequent one. In *Hall*, the defendant helicopter-transportation company was found to not be "at home" in Texas despite its negotiating contracts in the state, purchasing helicopters, equipment, and training services in substantial sums in the state, and

sending personnel to the state for training. *Id.* at 416. The contacts with Texas by the helicopter company in *Hall* were much more extensive than Float Alaska's in this case, and the Supreme Court nonetheless held that the company was not subject to the general jurisdiction of the court. The Court here reaches the same result—BNSF fails to prove that Float Alaska is subject to the Court's general jurisdiction.

2. Specific Jurisdiction

*Second*, BNSF asserts that Float Alaska is subject to the specific jurisdiction of the Court because Float Alaska directed its allegedly infringing conduct towards Texas. In support of its assertion, BNSF cites the same seven grounds mentioned above as evidence that Float Alaska's contacts with the state directly flow from BNSF's claims against it.

Because Float Alaska and BNSF both view the transfer of this action as an adequate remedy, the Court chooses not to make a conclusive determination as to whether it possesses specific jurisdiction over Float Alaska. *See* ECF No. 14 at 23–24; *see also* ECF No. 16 at 7–8. But the Court expresses that its ability to exercise jurisdiction over Float Alaska is, at best, questionable.[4] The Court therefore considers whether transferring this action to the Central District of California is a more appropriate means of ensuring the efficient administration of justice.

## B. Section 1404(a) Transfer

Federal venue rules states that "a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Decisions to transfer venue are "committed to the sound discretion" of the Court. *Jarvis Christian Coll. v. Exxon Corp.*, 845 F.2d 523, 528 (5th Cir. 1988). While a plaintiff's choice of forum should be respected, clear convenience in a transferee venue can overcome the deference afforded to a plaintiff's forum choice.

---

[4] In addition, the Court **DENIES** BNSF's request for jurisdictional discovery as it has failed to make a preliminary showing that discovery would yield the facts necessary to withstand dismissal. *See Johnson v. TheHuffingtonPost.com, Inc.*, 21 F.4th 314, 326 (5th Cir. 2021).

*See In re Volkswagen of Am., Inc.*, 545 F.3d 304, 314–15 (5th Cir. 2008) (en banc).

To determine whether a § 1404(a) transfer is appropriate, a court must analyze four private and four public-interest factors—none of which are given dispositive weight. *Id.* at 315. Based on the Parties' requests in the alternative that this case be transferred to the Central District of California, the Court assesses whether a transfer of venue to that court would be more appropriate considering the convenience of the Parties and the interest of justice.

  1. <u>Private-Interest Factors</u>

The private-interest factors are: (1) the accessibility of sources of proof; (2) the ability of the court to secure the attendance of witnesses; (3) the cost of attendance for witnesses; and (4) all other factors that make a trial expeditious and inexpensive. *In re Volkswagen of Am., Inc.*, 545 F.3d at 315. The Court addresses each in turn.

*First*, the Central District of California will have better access to sources of proof as most discovery in this case will flow from representatives of Float Alaska and documents produced regarding its prospective business plans. Given that Float Alaska's principal place of business is in Pomona, California, *see* ECF No. 13-1 at 9, the sources of proof available to the court will be easily accessible. *Second*, the court will have the best access to witnesses due to the proximity of Float Alaska. *Third*, the cost of travel for the witnesses will also be lower due to its proximity. *Fourth*, the trial will be more expeditious because witnesses and parties will be privy to that court's local rules and procedures, as Float Alaska is a local company with California counsel, and BNSF is a nationwide company with extensive experience being a litigant in that district.

Accordingly, the private-interest factors weigh in favor of transfer.

  2. <u>Public-Interest Factors</u>

The public-interest factors are: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law

that will govern the case; and (4) the avoidance of problems regarding conflict of laws or the application of foreign law. *In re Volkswagen of Am., Inc.*, 545 F.3d at 315. The Court again discusses each in turn.

*First*, the evidence shows that the median time to disposition of a civil case is fifty-six months in the Northern District of Texas compared to almost five months in the Central District of California. *See* CIVIL JUDICIAL BUSINESS OF THE UNITED STATES COURTS, ADMIN. OFFICE OF THE U.S. COURTS, 2021–2022 Report, Table C-5 (2022), *available at: https://www.us-courts.gov/statistics/table/c-5/judicial-business/202-2/09/30*. [5] Given the busyness of the docket of this Court, this factor weighs heavily in favor of transfer. *Second*, Texas and California both have localized interests based on the Parties' statuses as resident businesses. This factor is, therefore, neutral. *Third*, while BNSF's current complaint contains a pendent claim of unfair competition under Texas law, the gravamen of its complaint against Float Alaska is objecting to Float Alaska's allegedly infringing conduct relating to the Northern Pacific marks. *See* ECF No. 1 at 7–13 (depicting that four out of the five causes of action alleged against Float Alaska pertain to federal trademark law). Both courts can equally apply federal trademark law, which makes this factor neutral. *Fourth*, there do not appear to be problems associated with a conflict of laws or the application of foreign law. This final factor is neutral.

The public-interest factors weigh slightly in favor of transfer.

\* \* \*

Cumulatively, the private and public-interest factors—along with the statutory considerations under § 1404(a) of convenience of all those involved and the interest of justice—weigh in favor of transferring this case.

---

[5] This fact is likely due to the number of district judge positions versus the total number of civil cases in the respective districts. The Northern District of Texas has eighteen district judge positions, including the chief judge, senior status judges, and vacancies. In comparison, the Central District of California has thirty-eight district judge positions, including the same. From 2021 to 2022, the Northern District of Texas had 8,698 total civil cases reported and the Central District of California had 12,887. *See* CIVIL JUDICIAL BUSINESS OF THE UNITED STATES COURTS, Table C-5.

## CONCLUSION

For these reasons, the Court **DENIES** the Motion but **TRANSFERS** this case to the United States District Court for the Central District of California.[6]

**SO ORDERED** on this **22nd day of May 2023.**

Mark T. Pittman
UNITED STATES DISTRICT JUDGE

---

[6] Because the Court is transferring this case, BNSF's motion to strike the appendix supporting Float Alaska's reply brief (ECF No. 20) should be, and it is hereby, rendered **MOOT**.

8